Chad J. **WONSEY,** Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA and Insurance Company of North America, Defendants.**

No. CIV. 98–40239.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 18, 1998.

Jeffrey D. Weisserman, Jaffe, Raitt, Detroit, MI, for Chad J. Wonsey, plaintiff.

Peter A. Davenport, Noeske & Abbo, Troy, MI, for Life Insurance Company of North America, Insurance Company of North America, defendants.

*MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT*

GADOLA, District Judge.

On September 11, 1998, plaintiff Chad J. Wonsey filed a motion for declaratory judgment against defendants Life Insurance Company of North America ("Life") and Insurance Company of North America ("INA"). The Court is being called upon to determine whether Wonsey has the legal right to assign to a third-party specific future payments due him pursuant to an annuity contract purchased by Life in his name. Defendants have thus far refused plaintiff's request to assign the payments. On October 13, 1998, defendants filed their response to plaintiff's motion. On October 22, 1998, plaintiff filed his reply brief.

For the reasons set forth below, this Court will grant plaintiff's motion for declaratory judgment.

**I. FACTUAL BACKGROUND**

On December 15, 1980, Chad Wonsey sustained severe personal injuries as the result

of an automobile accident in Genesee County, Michigan. At the time of the accident, Wonsey was a minor, approximately six years of age.[1] On December 8, 1983, Wonsey's parents, on his behalf, entered into a Settlement Agreement and Release with INA, insurer for Le–Rob Corporation ("LeRob"). *See* Exh. A to plaintiff's motion. Pursuant to the settlement agreement, and in consideration for the full settlement and release of plaintiff's claims against Le–Rob, INA agreed to make future payments to plaintiff according to an agreed upon schedule.[2] In order to facilitate payment of benefits, INA purchased an annuity contract on plaintiff from one of its affiliates, Life Insurance Company of North America.

On April 21, 1998, plaintiff, of adult age and legally competent to enter into contracts, entered into a Purchase Agreement with Singer Asset Financial Company, L.L.C. ("Singer"). *See* Exh. B to plaintiff's motion. The purchase agreement purported to assign specifically identified future payments from the annuity contract.[3] On the same date, plaintiff provided defendants with written notification of his decision to change the beneficiary designation of the settlement agreement and annuity contract to his estate. Plaintiff also directed defendants to change the address to which payments were to be forwarded and for defendants to acknowledge these changes in writing. *See* Exh. C to plaintiff's motion. To date, defendants have refused to comply with all of Wonsey's written requests, thereby impairing him from completing his assignment to Singer as envisioned in the purchase agreement.

It must also be mentioned that the settlement agreement dated December 8, 1983 provides that plaintiff shall have no right to change the beneficiary of the policy or to assign the policy. As the agreement states, "it is understood and agreed that the Insurance Company of North America shall be the owner of the aforesaid annuity policy and the Plaintiffs should have: (1) no right to change the beneficiary of the policy...[and] (5) no right to assign the policy." *See* Exh. A to plaintiff's motion, p. 3.

## II. DISCUSSION

The issue presented in the case at bar is whether the Court may set aside a provision in a structured settlement agreement which prohibits assignments of future payments to be made under an annuity policy. Plaintiff argues that he is entitled to assign all or part of his rights under the settlement agreement, despite the agreement's express language. In support of this position, plaintiff cites M.C.L. § 440.9318(4), Michigan's adoption of the Uniform Commercial Code's Article 9, Section 318(4), (hereinafter "Section 9–318(4)"). The Michigan statute provides that

[a] term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

M.C.L. § 440.9318(4). Plaintiff also points to the official comment to U.C.C. Section 9–318(4), which states that "[s]ubsection (4) breaks sharply with the older contract doctrines by denying effectiveness to contractual terms prohibiting an assignment...under contracts of sale, construction contracts and the like." The Restatement of Contracts (Second), Section 322, also lends support in that "a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." RESTATEMENT (SECOND) OF CONTRACTS § 322(1).

Defendants' response centers upon the contention that Article 9 explicitly states that it does not apply to policies of insurance.

---

1. Plaintiff Chad Wonsey was born on September 11, 1974.

2. The following schedule of payments was agreed upon:
   $9,000 at age 18; $10,000 at age 19; $11,500 at age 20; $13,000 at age 21; $20,000 at age 25; $30,000 at age 30; $44,000 at age 35; $63,500 at age 40; $94,500 at age 45; $149,-750 at age 50.

Settlement Agreement dated December 8, 1983, Exh. A to plaintiff's motion.

3. The future payments subject to assignment were (1) the $20,000 payment due September 11, 1999, the $30,000 payment due September 11, 2004, and the $44,000 payment due September 11, 2009.

*See* M.C.L. § 440.9104. As defendants note, Article 9 excludes from its scope "a transfer of an interest or claim in or under any *policy of insurance* except as provided with respect to proceeds…and priorities in proceeds…." M.C.L. § 440.9104 (emphasis added). Defendants further maintain that the language of the contract in this case is clear and unambiguous and must be enforced. Where a contract is not ambiguous, there is no room for construction. *See Reynolds Spring Co. v. L.A. Young Ind.,* 101 F.2d 257 (6th Cir.1939); *Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127 (1984). Finally, defendants assert that assignments require a "complicated review process," whereby companies must "review substantial paper work" and determine whether the assignment appears to be legal. According to defendants, assignments should thus be disfavored, and are at odds with the intent of the parties. Defendants further maintain that assignments may be detrimental to beneficiaries who often suffer from the legal disabilities of minor status or physical and/or mental impairment.

### 1. WHETHER ARTICLE 9 OF THE U.C.C. APPLIES TO PLAINTIFF'S PROPOSED ASSIGNMENT OF FUTURE PAYMENTS UNDER THE SETTLEMENT AGREEMENT DATED DECEMBER 8, 1983

■ The issue presented is one of first impression for both state and federal courts located in Michigan. The critical question which first must be answered is whether Article 9 applies at all to plaintiff's proposed assignment of future payments. As mentioned above, if plaintiff is attempting to transfer "an interest or claim in or under [a] policy of insurance," then, with certain exceptions, Article 9 would not apply to a determination of the enforceability of the nonassignment clause. *See* M.C.L. § 440.9104(g). On the other hand, if the Court finds that plaintiff is not attempting to transfer an interest in a policy of insurance, then Article 9 would be applicable, and the non-assignment clause would be unenforceable pursuant to M.C.L. § 440.9318(4).[4]

The exclusionary language of Article 9 is clear. Although the cases are not plentiful, courts have applied Section 9–104(g) to exclude various transactions from the scope of Article 9. In *In re Duke Roofing Co.,* 47 B.R. 990 (E.D.Mich.1985), for example, the court excluded from Article 9 an assignment of unearned insurance premium refunds. Insurance payments will *not* be excluded, however, where such payments qualify as "proceeds" under Article 9.[5] This is the so-called "derivative insurance proceeds" rule, which only applies in the event of casualty loss of collateral subject to a previously perfected security interest.[6] The "derivative insurance proceeds" rule, however, is not applicable in the case at bar because the future payments

---

4. It should be noted that Article 9 "applies to security interests created by contract including pledge, *assignment*, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract, and lease or consignment intended as security." M.C.L. § 440.9102(2)(emphasis added). In the instant case, as per the Purchase Agreement dated April 21, 1998, Wonsey has attempted to *assign* certain assets (i.e., the future payments) to Singer Asset Finance and thereby has attempted to grant Singer a security interest in said payments. *See* Exh. B to plaintiff's motion, ¶ 2.

5. "Proceeds" are defined as "whatever is received upon the sale, exchange, collection or other disposition of collateral, or proceeds. *Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.*" M.C.L. § 440.9306 (emphasis added).

6. As one bankruptcy court in Minnesota noted, UCC section 9–104(g) provides that Article 9 does not apply to any "interest or claim in or under" an insurance policy. *See* Minn.Stat. § 336.9–104(g). The only exception is in the case of so-called "derivative insurance proceeds." The reason for the derivative insurance proceeds exception is that a creditor's Article 9 security interest normally extends to the proceeds of its collateral as well as the collateral itself. *See* Minn.Stat. § 336.9–306(2). Where the creditor requires the debtor to insure the collateral and the collateral is subsequently destroyed, the insurance proceeds are in essence proceeds from the disposition of the collateral. *See PPG Industries, Inc. v. Hartford Fire Ins. Co.,* 531 F.2d 58, 60–61 (2d Cir.1976); *In re Reda, Inc.,* 54 B.R. 871, 875 (Bankr.N.D.Ill.1985). In such a case section 9–306(1) makes clear that these "derivative insurance proceeds" are to be treated the same as any other proceeds of the collateral. Minn.Stat. § 336.9–306(1).

at issue do not constitute "proceeds," i.e., they are not payable by reason of loss or damage to previously secured collateral. *See* M.C.L. § 440.9306.

In the instant case, payments are to be made pursuant to a structured settlement agreement entered into between plaintiff Chad Wonsey's parents and the Insurance Company of North America (INA). As the agreement explicitly states, "[INA] shall, in order to facilitate the payment of benefits specified herein, purchase...an annuity contract on the life of Chad Wonsey from Life Insurance Company of North America...." *See* Exh. A to plaintiff's motion, p. 2. The question thus becomes whether such an "annuity contract" qualifies as a "policy of insurance" under 9–104(g). Under Michigan law, it appears that an annuity contract does come within the definition of a "policy of insurance." *See* M.C.L. § 500.4000 *et seq.* (governing life insurance policies and certain annuity contracts); *see also* BLACK'S LAW DICTIONARY 90 (6th ed.1990)(defining "annuity policy" as "[a]n insurance policy providing for monthly or periodic payments to insured to begin at fixed date and [to] continue through insured's life"). As such, plaintiff is therefore precluded from invoking Article 9. Section 9–318(4) may not operate, in and of itself, to nullify the settlement agreement's prohibition on assignments. *See* M.C.L. § 440.9318(4).

## 2. SINCE ARTICLE 9 IS INAPPLICABLE, THE COURT MUST LOOK TO OTHER MICHIGAN STATUTORY LAW AND/OR THE COMMON LAW OF MICHIGAN, AS WELL AS TO ANY DEVELOPING TRENDS IN OTHER JURISDICTIONS

■ In a case, such as the present one, where Article 9 has been held inapplicable, the court must apply state statutory law. *See In re Duke Roofing Co.*, 47 B.R. 990, 992 (E.D.Mich.1985)(citing *Thico Plan, Inc. v. Maplewood Poultry Co.*, 2 B.R. 550, 555 (Bankr.D.Me.1980)). In the case at hand, there is no Michigan statute which definitively resolves the issue presently before the Court. Consequently, this Court will look to

Michigan common law, as well as to any developing trends in other jurisdictions. *See id.*

Plaintiff has cited no Michigan case law addressing the issue of whether a court may set aside an anti-assignment provision in a structured settlement agreement providing for future payments to be made under an "annuity policy." Other jurisdictions, however, have dealt with similar issues. In *Berkowitz v. Haigood*, 256 N.J.Super. 342, 606 A.2d 1157 (N.J.Super. Ct. Law Div.1992), plaintiff, a chiropractic doctor, rendered medical services to defendant after the latter was involved in an automobile accident. *Id.* at 344, 606 A.2d 1157. Defendant had signed a document which purported to create a lien against the proceeds of his pending personal injury action. The document directed defendant's attorney to disburse the funds to plaintiff if certain conditions were satisfied. The New Jersey state court held that any proceeds derived from defendant's settlement of his claim for personal injuries were assignable. However, *Berkowitz* does not dispose of the issue in the instant case because the settlement agreement in *Berkowitz* contained no anti-assignment clause.

In *Fox–Greenwald Sheet Metal Co. v. Markowitz Bros.*, 452 F.2d 1346 (D.C.Cir. 1971), the district court addressed a similar issue in the context of a subcontractor's assignment. The subcontract in *Fox–Greenwald* contained a clause prohibiting assignments, which the court, after careful consideration of Maryland law, found to be inoperative. In reaching its decision the court engaged in the following commentary:

*[j]udicial holdings sustain overwhelmingly the proposition that a contractual ban on assignment ordinarily serves to protect the obligor alone, and in no way imperils the transaction as between assignor and assignee. "Where a term in a contract prohibits assignment and is not rendered ineffective by statute or otherwise, the term is to be construed, unless a different intention is manifested, ...to be for the*

*In re Investment and Tax Svs., Inc. v. Norwest Bank Minn., N.A.*, 148 B.R. 571, 573 (Bankr. D.Minn.1992).

benefit of the obligor, *and not to prevent the assignee from acquiring rights against the assignor . . . .*" The obligor, of course, may gain from a valid and unwaived nonassignability provision the prerogative to resist or even nullify the assignment. That does not mean, however, that the assignee cannot compel the assignor to stand by his bargain where the obligor has not seen fit to interfere. And perhaps nowhere has the rule that an assignment offending such a provision normally binds the assignor to the assignee seen greater application than where the assigned claim was for monies due or to become due under a contract. *Fox–Greenwald,* 452 F.2d at 1351 (footnotes omitted and emphasis added). The holding in *Fox–Greenwald* has been codified in Restatement of Contracts (Second), Section 322(1), which states that "[u]nless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." RESTATEMENT (SECOND) OF CONTRACTS § 322(1). Even more to the point is Section 322(2), providing that "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested . . . is for the benefit of the obligor, and *does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition.*" *Id.* § 322(2)(c).

As the latest Restatement makes clear, the *modern trend* with respect to contractual prohibitions on assignments is to interpret these clauses narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee. The rationale behind these cases is derived from the implicit recognition that the obligor, the party obligated to perform, would not suffer any harm by a mere assignment of payments under a contract. Harm to obligor would result, however, in cases involving personal services contracts or other situations where the duties owed to the parties may change depending on the identity of the assignee. *See Hy King Assocs. v. Versatech Manufacturing Industries,* 826 F.Supp. 231, 238 (E.D.Mich.1993)(Gadola, J.)(holding that under Michigan law, there was no valid assignment of exclusive sales representation contract between manufacturer and representative to corporation formed by representative).

The instant case does not involve a situation where significant harm would result to defendant Life or defendant INA by the proposed assignment of rights to future payments. Nor is this a situation involving a delegation of duties under a personal services contract. Nonetheless, defendants strenuously argue that when a beneficiary of a structured settlement agreement decides to sell all or a number of his future payments, "it requires a complicated review process" and that "defendants [would be required] to review substantial paper work, and [to] determine if the assignment appears to be legal . . . and/or whether any guarantees or releases provided by the assignor . . . are satisfactory to fully and completely protect [defendants] . . . ." The Court is not persuaded. The reasons asserted by defendants in objecting to the proposed assignment do not appear to amount to substantial harm or actual prejudice to defendants' interests, but merely center upon the necessary administrative tasks associated with the assignment's implementation. As such, defendants have not submitted sufficient reasons to justify disregarding the modern trend of upholding assignments in the face of contractual anti-assignment clauses.

Plaintiff's position is further bolstered by several recent unpublished state court decisions recognizing a plaintiff's right to assign payments under a settlement agreement. *See Owen v. Continental Casualty Co.,* Docket No. L–3196–98 (Super.Ct.N.J. Sept. 23, 1998); *Horn v. Amica Mutual Ins. Co.,* Case No. 173646 (Super.Ct.Ca. Sept. 21, 1998); *JUA Funding Corp. v. CNA Ins.,* Docket No. L–10824–97 (Super. Ct. N.J. June 3, 1998); *In re Donna M. Meisinger,* Case No. 98MR45 (Chancery Div. Il. Apr. 2, 1998); *In re Joann Minson,* Case No. 98–P–104 (Probate Div. Il. Apr. 3, 1998); *Rusyn v. Travelers Casualty and Surety Co.,* Case No. RIC 311592 (Super.Ct.Ca. November 5, 1998). Although the *Owen* and *JUA Funding* decisions expressly rely upon New Jersey's version of Article 9, the other cases cited above

do not specifically reference that provision. Most persuasively, the California state court in *Rusyn* allowed plaintiff to assign his interest in structured settlement benefits. The court held that the prohibition set forth in the settlement agreement regarding the assignment of the rights to periodic payments is "void and of no force or effect." *See Rusyn* ¶ 1(a).

At the hearing held on December 16, 1998, defendant was able to cite only one case wherein a court has prohibited assignment of periodic payments under a structured settlement agreement. *See Johnson v. First Colony Life Ins. Co.*, 26 F.Supp.2d 1227 (C.D.Ca. 1998). In that case, the parties entered into an agreement containing a "non-assignability clause," in settlement of a personal injury claim. The district court ultimately granted defendants' motion for summary judgment, and thus denied plaintiffs' request to assign the periodic payments. Although the facts in *Johnson*, at first blush, appear similar to those of the instant case, there is a crucial difference which serves to distinguish the two cases. In *Johnson*, the court placed great weight on the fact that

> plaintiffs never explain how an express prohibition against assignment...is beneficial to them. To the contrary, it seems plain that, because the clause mirrors language in [Internal Revenue Code] § 130, relating to the tax treatment of the assignee of the liability, the clause was included solely for the benefit of the defendants.

*Id.* at 1229–30. In the case at bar, by contrast, plaintiff has been able to "overcome the presumption" that the nonassignability clause is for the benefit of defendants. *See id.* at 1230. As previously discussed, plaintiff was a nine year old minor child at the time of the execution of the original settlement agreement. There has been no showing or suggestion that the anti-assignment clause in this case was designed as a tax benefit for defendants. Rather, it appears more likely to have been seen as a protective measure to safeguard the interests of plaintiff, until such time as he reached adulthood. Given this critical factual difference distinguishing the two cases, this Court is not persuaded to follow the *Johnson* court's rationale motivating its denial of plaintiffs' request to assign future periodic payments.

In light of plaintiff's strong showing of a modern trend in other jurisdictions favoring the assignment of periodic payments under structured settlement agreements, the prohibitions against such assignments having been held to be unfair restraints on alienation, this Court will grant plaintiff's motion for declaratory judgment. As discussed above, this is not a situation involving a delegation of duties under a personal services contract. Moreover, defendants' argument of prejudice allegedly resulting from the assignment is unconvincing. Accordingly, defendants Life Insurance Company of North America and Insurance Company of North America will be instructed to honor the proposed assignments of future payments to Singer Asset Financial Company, L.L.C.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiff Chad J. Wonsey's motion for declaratory judgment is **GRANTED**; a declaratory judgment in accordance with this order shall be entered forthwith. **SO ORDERED.**

## DECLARATORY JUDGMENT

The Court, having granted plaintiff Chad J. Wonsey's motion for declaratory judgment, and after a hearing conducted on December 16, 1998, the Honorable Paul V. Gadola, presiding,

It is hereby **ORDERED** that defendants Life Insurance Company of North America and Insurance Company of North America shall honor plaintiff's assignment of contract rights to Singer Asset Financial Company, L.L.C.;

It is further **ORDERED** that defendants shall honor and process plaintiff's change of beneficiary and mailing address;

It is further **ORDERED** that the respective parties shall be liable for their own costs and attorneys' fees.