9 December 1999

NO. 4-98-0928

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

AARON W. HENDERSON, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Vermilion County

ROADWAY EXPRESS, ) No. 98MH62

Defendant, )

and )

LIBERTY LIFE ASSURANCE COMPANY OF ) 

BOSTON and KEYPORT LIFE INSURANCE ) Honorable

COMPANY, ) James K. Borbely,

Invervenors-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In August 1997, Aaron Henderson settled a personal injury lawsuit against Roadway Express.  Pursuant to the settle-

ment agreement, Henderson agreed to accept a lump-sum payment of $137,500, 14 future annual periodic payments of $2,500 each, and a $25,000 payment due in 2012.  Paragraph 3 of the settlement agreement contained an antiassignment provision that provided:

“3.0 Plaintiff’s Rights to Payments

Plaintiff [Henderson] acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff; nor shall the Plaintiff have the power to sell, mortgage, encumber, or antici

pate the Periodic Payments, or any part thereof, 
by
 
assignment
 
or
 
otherwise
." (Empha

sis added.)

The settlement agreement did not prevent Roadway Express from assigning its liability.  Paragraph 6 of the settlement agreement provided:

“6.0 Right to Purchase an Annuity.

Defendant itself [Roadway Express] or through its Assignee [may] reserve the right to fund the liability to make the Periodic Payments through the purchase of an annuity policy. ***  The Defendant or the assignee shall be the sole owner of the annuity policy and shall have all rights of ownership."

Soon after executing the settlement agreement, Roadway Express assigned its liability to Keyport Life Insurance Company (Keyport).  The uniform qualified assignment also contained an antiassignment provision that  provided "[n]one of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, 
assigned
 or encumbered."  (Emphasis added.)  Keyport subsequently purchased an annuity from Liberty Life Assurance Company of Boston (Liberty) to fund its liability to make payments to Henderson.  The annuity contract stated "the rights and privileges stated  in this policy may be exercised only by the Owner [(Keyport)]."

Despite the antiassignment provisions, Henderson attempted to assign a portion of his future settlement payments in May 1998 to Singer Asset Finance Company (Singer) in exchange for an immediate, discounted lump-sum payment.  Under the terms of the purchase agreement, Henderson would receive a lump-sum payment of $12,210 in exchange for his assignment to Singer of 12 annual payments of $2,500.  Thereafter, Henderson filed a peti

tion to allow assignment of annuity benefits with the circuit court of Vermilion County.  Section 155.34 of the Illinois Insurance Code (Insurance Code) prohibits assignment of struc

tured settlement benefits without court approval.  215 ILCS 5/155.34 (West 1998).

  The circuit court refused to approve Henderson's assignment, holding the settlement agreement clearly and unambig

uously prohibited the parties from assigning any of the periodic payments.  Henderson appeals, attacking the circuit court’s decision with a barrage of arguments.  Henderson argues his assignment should have been upheld despite the antiassignment clause because the modern trend of authority disfavors contrac

tual prohibitions on assignments, especially in his case, where the antiassignment provisions were ambiguous and failed to expressly make the assignment "void."  Also, Henderson argues the assignment must be allowed where the only obligation is the payment of money, the antiassignment provisions are waived because they were for his sole benefit, and the assignment is consistent with section 155.31 of the Insurance Code.  Hender-

son’s final contention is that article 9 of the Uniform Commer

cial Code--Secured Transactions (Commercial Code) (810 ILCS 5/9-

101 through 9-9902 (West 1998)) prohibits the enforcement of the restrictions on assignments.

The trial court's denial of Henderson's assignment was based on its interpretation of the settlement contract.  Constru

ing the language of a contract is a question of law, and we review a trial court's determination of a contract 
de
 
novo
.  
Reaver v. Rubloff-Sterling, L.P.
, 303 Ill. App. 3d 578, 581, 708 N.E.2d 559, 561 (1999).  When construing a contract, our duty is to effectuate the intent of the parties to the contract.  
Blackhawk Hotel Associates v. Kaufman
, 85 Ill. 2d 59, 64, 421 N.E.2d 166, 168 (1981).  The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous.  
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 523, 678 N.E.2d 1060, 1063 (1997).  A contract is ambiguous only if it is susceptible to more than one reasonable interpretation.  
Reaver
, 303 Ill. App. 3d at 581, 708 N.E.2d at 561.   

Henderson claims the settlement agreement is ambiguous regarding the permissibility of assignments because paragraph 14 of the same agreement states:

“14.0   Entire Agreement and Successors in Interest

This Settlement Agreement contains the entire agreement between the Plaintiff and the Defendant with regard to the matters set forth in it and shall be binding upon and enure to the benefit of the executors, admin

istrators, personal representatives, heirs, successors 
and
 
assigns
 
of
 
each
.” (Emphasis added.)

Henderson argues that while paragraph 3 purports to bar assign

ments,  paragraph 14 recognizes the validity of such assignments.  Due to this conflict, Henderson argues the settlement agreement is confusing and ambiguous, and the antiassignment provisions must be construed as unenforceable.

We find the plain language of the settlement agreement clearly indicates the parties intended to forbid Henderson from assigning his periodic payments.  Paragraph 3, entitled “Plaintiff’s Rights to Payments,” specifically states Henderson lacked the power to sell or anticipate his periodic payments, “by assignment or otherwise.”  Paragraph 14 appears to address an entirely different issue and does not render the contract ambigu

ous or conflicting.  Paragraph 14, entitled “Entire Agreement and Successors in Interest,” appears to be an integration clause that addresses the issue of who retains rights under the agreement upon the death or dissolution of a party.  The two clauses are easily harmonized.  Paragraph 3 specifically prevents Henderson from assigning 
periodic
 
payments
, but does not prevent either party from assigning other rights or obligations under the contract.  The reference to “assigns” in paragraph 14 may reason

ably be interpreted to refer to those assignments that are not expressly prohibited under the contract.  When both a general and specific clause address the same subject, full effect should be given to the more specific clause, and the general clause should be given whatever modification the specific clause makes neces

sary.  
Grevas v. United States Fidelity & Guaranty Co.
, 152 Ill. 2d 407, 411, 604 N.E.2d 942, 944 (1992).  Also, when possible, courts should construe a contract so that different provisions are harmonized and not conflicting with one another.  
Snelten v. Schmidt Implement Co.
, 269 Ill. App. 3d 988, 993, 647 N.E.2d 1071, 1074 (1995).  Judging from the clear and logical meaning of the language of the whole contract, it appears the parties intended just what the contract said:  Henderson lacked the power to assign the periodic payments.  All parties were represented by counsel during the drafting of the settlement agreement and Henderson does not allege he suffered from an inferior bargaining position. 

Nevertheless, Henderson contends we should set aside the antiassignment provision because the recent weight of author

ity disfavors such provisions and refuses to enforce them unless they 
explicitly
 state that any attempted assignment is “'void,' or 'invalid,' or 'otherwise ineffective.'”  In support of this contention, Henderson cites various federal cases, cases from other jurisdictions, the Restatement (Second) of Contracts §322 (1981), and leading commentators on the law of contracts.  

Illinois case law has never addressed the specific issue of whether a court may disregard an antiassignment provi

sion in a structured settlement agreement.  Few Illinois deci

sions have addressed the issue of validity of antiassignment provisions at all.  In cases involving real estate, such provi

sions are generally disfavored and narrowly construed.  See 
Postal Telegraph-Cable Co. v. Western Union Telegraph Co.
, 155 Ill. 335, 347-48, 40 N.E. 587, 590 (1895) (“[r]estrictions on the power of alienation have long been [dis]favored”); 
Wachta v. First Federal Savings & Loan Ass’n
, 103 Ill. App. 3d 174, 181, 430 N.E.2d 708, 715 (1981) (the policy of this State has always been to construe such restrictions with the utmost strictness).  In 
State Street Furniture Co. v. Armour & Co.
, 345 Ill. 160, 177 N.E. 702 (1931), the Supreme Court of Illinois upheld the assign

ment of an employee’s wages despite a provision disallowing assignments without the employer’s consent.  The court stated, “[w]hen one has incurred a debt *** the debtor cannot restrain its alienation ***.  A debt is property, which may be sold or assigned ***.”  
State Street Furniture Co.
, 345 Ill. at 165, 177 N.E. at 704-05.  The court was concerned the employer had not bargained for the antiassignment provision and had inserted the provision for his own benefit.  
State Street Furniture Co.
, 345 Ill. at 162-63, 177 N.E. at 703-04.  In 
Lomas Mortgage U.S.A., Inc. v. W.E. O’Neil Construction Co.
, 812 F. Supp. 841, 844 (N.D. Ill. 1993), a federal district case applying Illinois law, an assignment was upheld despite an antiassignment provision where the terms of the contract did not specifically render void an attempted assignment, the contract only restricted the “right” and not the “power” to assign, and to void the assignment would be against the intent of the parties and would advance no useful policy.

Other jurisdictions have addressed the precise issue presented in this case, with varying results.  In 
Johnson v. First Colony Life Insurance Co.
, 26 F. Supp. 2d 1227 (C.D. Cal. 1998), the court upheld an antiassignment clause, with language almost identical to the antiassignment clause in this case, where a plaintiff attempted to sell his periodic payments from a structured settlement to a factoring company in exchange for a lump-sum payment.  The court found the language of the anti­

assignment clause mirrored the language of section 130 of the Internal Revenue Code of 1986 (hereinafter Internal Revenue Code) (26 U.S.C. §130 (1994)) relating to the tax treatment of the assignee of liability and therefore was bargained for and in

cluded for the benefit of the defendants.  
Johnson
, 26 F. Supp. 2d at 1229.  The 
Johnson
 court also dismissed the plaintiff’s argument that he could waive the provision, stating “it defies all logic that a party could have the right to waive a term that, by its unambiguous language, restricts that party’s own behav

ior."  
Johnson
, 26 F. Supp. 2d at 1229.

In 
Grieve v. General American Life Insurance Co.
, 58 F. Supp. 2d 319 (D. Vt. 1999), the federal district court also upheld an antiassignment clause that contained the same language as the clauses in 
Johnson
 and the present case.  The court found the antiassignment provision was clear and unambiguous and that the proposed assignment would materially increase the defendant's risk of adverse tax consequences.  
Grieve
, 58 F. Supp. 2d at 324.  The court stated that "this court will not lend its approval to the voiding of unambiguous, bargained-for contract terms in order to enable Singer [proposed assignee] to profit, at an exorbitant rate of interest."  
Grieve
, 58 F. Supp. 2d at 324.

However, in 
Wonsey v. Life Insurance Co. of North America
, 32 F. Supp. 2d 939 (E.D. Mich. 1998), the court upheld the assignment of structured settlement payments, finding a modern trend of upholding assignments in the face of contractual antiassignment clauses.  The court found the clause was for the benefit of the plaintiff's assignor and distinguished
 
Johnson
 on the “critical factual difference” that the language of the antiassignment provision in 
Wonsey
 did not suggest the clause was designed as a tax benefit for defendants like the provision in 
Johnson
.  
Wonsey
, 32 F. Supp. 2d at 944.

Henderson argues the antiassignment provision was included for his sole benefit.  He argues that such provisions in a structured settlement are intended solely to protect the vulnerable claimant from squandering his money and ensuring claimant a steady stream of tax-sheltered income over time.  The defendants argue the antiassignment provisions protect all parties, not just Henderson.  If Henderson is allowed to assign his periodic payments for a lump-sum payment, defendants argue adverse tax consequences may arise for Henderson, Liberty, and Keyport. 

We find the antiassignment provision was a bargained- for provision that was intended to benefit all parties and, therefore, is enforceable against Henderson.  As the United States Treasury Department has recently explained:

“Congress enacted favorable tax rules intended to encourage the use of structured settlements--and conditioned such tax treat

ment on the injured person’s inability to accelerate, defer, increase[,] or decrease the periodic payments--because recipients of structured settlements are less likely than recipients of lump[-]sum awards to consume their awards too quickly and require public assistance.”  United States Treasury Depart

ment, General Explanations of the Administra

tion's Revenue Proposals, at 20 (February 1998).  

Structured settlements and the favorable tax treatment they enjoy also help guarantee predictability for insurers, which is impor

tant for transactions involving long-term liabilities.  The current favorable tax treatment afforded to both annuity owners, annuity issuers, and claimants presupposes that (1) the struc

tured settlement payments constitute tax-free injury compensation to the recipient, and (2) the structured settlement recipient can receive the settlement payments only when they are due and cannot accelerate the payments or otherwise derive present economic benefit from payments due in the future.  United States Treasury Department, General Explanations of the Administration's Revenue Proposals, at 20 (February 1998).   More important than whether or not these tax concerns are real or will actually arise is the fact that the parties implemented the antiassignment provisions with these concerns in mind.  The language of the provisions tracks the qualified assignment language of section 130(c)(2)(B) of the Internal Revenue Code.  26 U.S.C. §130(c)(2)(B) (1994).  Clearly, the provisions were bargained for and cannot be simply discarded or waived. 

Henderson also attempts to avoid the antiassignment provisions by arguing they are prohibited by article 9 of the Commercial Code.  “A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due ***.”  810 ILCS 5/9-318(4) (West 1998).   However, section 9-104(g) of the Commercial Code expressly excludes from article 9 “a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds *** and priorities in proceeds.”  810 ILCS 5/9-104(g) (West 1998).  An “annuity policy” is an “insurance policy providing for monthly or periodic pay

ments to the insured.”  Black's Law Dictionary 89 (7th
 ed. 1999).  Accordingly, article 9 does not apply to annuity policies, such as the one here.  
Wonsey
, 32 F. Supp. 2d at 942. 

The antiassignment provision of the settlement agree

ment very clearly forbids Henderson from assigning his periodic payments.  Henderson does not provide any persuasive authority or case law, certainly not Illinois case law, to justify why we should ignore the parties' clear intentions to incorporate this bargained-for provision.  Under the circumstances of this case, any general policy of enabling persons to transfer property freely does not outweigh the parties' contractual intentions and the public policy of providing steady income and tax-favorable treatment to claimants of structured settlements, as evidenced by the recent passage of section 155.34 of the Insurance Code. 

Accordingly, we affirm the judgment of the circuit court of Vermilion County.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.