In re ESTATE OF WILLIAM SHANAN POWLESS, a Minor (William Powless, Petitioner; Safeco Life Insurance Company, Respondent-Appellee; J.G. Wentworth, Intervening Respondent-Appellant).

Fifth District    No. 5—99—0477

Opinion filed July 21, 2000.

Francis R. Petrek, Jr., and James E. Abbott, both of Bollinger, Ruberry & Garvey, of Chicago, for appellant.

Richard M. Roessler, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

This is a case where the circuit court rejected a request to assign a future structured-settlement payment in exchange for a lump-sum payment. We are asked to decide whether the trial judge erred in doing so.

In early 1988, William Powless (Powless ) sustained injuries when he was accidently struck in the eye with a chain by a childhood friend. Powless was nine years old. His parent and natural guardian brought a claim and settled it under a homeowner's policy issued by Pekin Insurance Company (Pekin). Pursuant to the settlement agreement, a structured-payment plan was set up on behalf of Powless.

The structured-settlement agreement provided that Powless would receive a lump-sum payment of $30,000. In addition, he was to receive the following payments upon reaching majority age: $20,000 on January 14, 1998; $20,000 on January 14, 2000; $20,000 on January 14, 2005; $20,000 on January 14, 2010; $20,000 on January 14, 2015; and $20,000 on January 14, 2020. The settlement agreement also provided that Pekin would "purchase an Annuity Contract through or with SAFECO Life Insurance Company."

Pekin complied and purchased the annuity contract through Safeco Life Insurance Company (Safeco). Under the annuity contract, Powless was the named beneficiary, but Pekin was the owner of the annuity. The annuity contract contained a provision that provided, "[b]enefit payments may not be advanced, accelerated, or commuted."

On December 15, 1998, Powless entered into an agreement to assign his January 14, 2000, structured-settlement payment to J.G. Wentworth (Wentworth) in exchange for a lump-sum payment at that time and an additional lump-sum payment upon Wentworth's receipt of the full $20,000 on January 14, 2000.

Shortly after entering into the agreement to assign, Powless petitioned the trial court for its approval of the assignment. His request was made pursuant to section 155.34(b) of the Illinois Insurance Code, a provision that reads as follows:

> "No person who is the beneficiary of a structured settlement of a claim for personal injury may assign in any manner the payments of the settlement without prior approval of the circuit court of the county where an action was or could have been maintained." 215 ILCS 5/155.34(b) (West 1998).

Initially, the trial court was not troubled with the request. On January 20, 1999, Powless received court approval to assign his January 14, 2000, payment. However, shortly thereafter, Safeco filed a motion for relief from the court order approving the assignment and for leave to file objections to the petition to assign. Next, Wentworth petitioned to intervene and to participate in the hearing on the petition to approve the assignment.

On June 9, 1999, the trial court held a hearing on the pending motion. During the hearing, the trial court learned the reason behind Powless's decision to assign the future payment. Powless had a six-month-old child. He intended to marry the child's mother and support the two of them with his full-time job, at which he earned $11.34 per hour. He needed to assign the structured-settlement payment due in the year 2000 in order to pay bills associated with the birth of his child. The trial court also learned that Powless consulted with the attorney who originally represented him and his mother on the personal injury suit. His attorney advised him of the ramifications of such an assignment. The attorney also informed the court that he believed that Powless's need for the immediate cash was legitimate.

Finally, the trial court heard that in exchange for the assignment of the one payment, Wentworth would initially pay Powless $10,012.25, and upon receipt of the full $20,000, Wentworth would pay Powless an additional $7,174.34. Wentworth would actually receive $2,813.41 of the structured-settlement payment.

On June 16, 1999, the trial court granted Wentworth's petition to intervene, granted Safeco's motion for relief from its January 20, 1999, order, and sustained Safeco's objections to the petition for assignment. We do not know what convinced the trial court to reverse itself and to sustain Safeco's objections. It did not explain the reasons for its decision. Therefore, we will address all of the arguments that Safeco advanced in its objections to the assignment.

Before we address the issues raised in this appeal, we note that the date on which Safeco would have been required to make its next payment to Powless—January 14, 2000—has passed. The briefing schedule in this court extended beyond that date. No party in this case raises the issue of this appeal's mootness.

Even though we cannot render relief to the parties, we believe we should address the questions that this appeal presents. The language of Safeco's annuity contract could be raised again in this case on later payments or in other Safeco cases statewide and further could be raised by other structured-settlement companies in efforts to thwart assignments. For these reasons, we will address the issues raised in this appeal.

■ Initially, we must address Safeco's challenge over Wentworth's standing to bring this appeal. Safeco argues that Wentworth lacks standing because the trial court's order sustaining its objections "has no direct, immediate, or substantial effect" on Wentworth—a nonparty. See *Success National Bank v. Specialist Eye Care Center, S.C.*, 304 Ill. App. 3d 74, 76, 710 N.E.2d 482, 484 (1999). We find that this argument lacks merit.

Wentworth sought and received the right to intervene at the trial court level because Wentworth's business relationship with Powless was clearly going to be affected by the trial court's ultimate determination. In fact, because the trial court sustained Safeco's objection after having previously granted Powless's request for leave to assign one of his structured—settlement payments, Wentworth is out the $2,813.41 it would have earned. This loss of income is clearly sufficient to show that Wentworth was directly and immediately prejudiced by the trial court's judgment and that Wentworth would potentially benefit by a reversal of that judgment. See *St. Mary of Nazareth Hospital v. Kuczaj*, 174 Ill. App. 3d 268, 271, 528 N.E.2d 290, 292 (1988).

The fact that Powless did not appeal the trial court's decision is not relevant to this particular standing issue because the trial court's order directly interfered with Wentworth's own business interests. As Wentworth meets the requirements for standing, we address the merits of Wentworth's appeal.

On appeal, Wentworth contends that the trial court erroneously interpreted the purpose of section 155.34 of the Illinois Insurance Code, failed to apply the appropriate contract law criteria, and erroneously sustained Safeco's objections to Powless's petition for assignment.

■ Section 155.34 of the Illinois Insurance Code grants the circuit court discretion to approve or disapprove an assignment of structured-settlement payments. Therefore, as discretion is vested in the circuit court, we shall review its disapproval of the assignment under an abuse-of-discretion standard. See *Green v. Safeco Life Insurance Co.*, 312 Ill. App. 3d 577, 580, 727 N.E.2d 393, 396 (2000).

The first argument that Safeco advanced in opposition to the assignment was that the language of the structured-settlement contract and the annuity contract prohibited Powless from assigning his right to benefit payments.

■ Construing a settlement and/or annuity contract involves questions of law, and our duty is to effectuate the intent of the parties to the contract. See *Henderson v. Roadway Express*, 308 Ill. App. 3d 546, 548, 720 N.E.2d 1108, 1110 (1999). "The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous." *Henderson*, 308 Ill. App. 3d at 548, 720 N.E.2d at 1110. The parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law. See *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 945, 582 N.E.2d 1313, 1319 (1991). Such a contract is binding on both parties, and it is the duty of the court to construe it and enforce the contract as made. See *McMahon*, 221 Ill. App. 3d at 945, 582 N.E.2d at 1319.

■ Few Illinois decisions have addressed the precise assignment question at issue in this case. The cases that Safeco relies upon in support of its argument are clearly different from this one because of the language used in the settlement and annuity contracts. In *Henderson*, the appellate court affirmed the trial court's decision denying a request for the approval of an assignment of structured-settlement payments. The settlement agreement in *Henderson* had an antiassignment provision that clearly and unambiguously prohibited the plaintiff from assigning any of his periodic payments. *Henderson*, 308 Ill. App. 3d at 547, 720 N.E.2d at 1109. In *Green*, the court also upheld an antiassignment clause that contained the same language as the clauses in the *Henderson* case, where a plaintiff attempted to sell his periodic payments from a structured settlement to a factoring company in exchange for a lump-sum payment. *Green*, 312 Ill. App. 3d at 580-81, 727 N.E.2d at 396-97.

What distinguishes our case from the *Henderson* and *Green* cases is a total absence of any antiassignment language in either the structured-settlement agreement or the annuity contract. Safeco argued to the trial court and in its appellate brief that the contracts at issue specifically preclude assignment. However, the structured-settlement agreement between Powless and Pekin contains no antiassignment clause of any kind. The annuity contract between Pekin and Safeco, by which Pekin financed the structured settlement, only contains a clause that states, "[b]enefit payments may not be advanced, accelerated, or commuted." The annuity contract contains no language specifically addressing an-assignment.

Safeco contends that as Pekin owns the annuity contract and Powless is merely the beneficiary, Powless has no authority to assign any payments owed to him pursuant to that contract. Safeco cites *Allstate Insurance Co. v. American Bankers Insurance Co.*, 882 F.2d 856 (4th Cir. 1989), and *Johnson v. First Colony Life Insurance Co.*, 26 F. Supp. 2d 1227 (C.D. Cal. 1998).

Safeco is correct that Powless is only the beneficiary under its annuity contract with Pekin. However, Powless did not attempt to assign his rights to future payments under the annuity contract. Powless's contract with Wentworth clearly contemplates an assignment of his rights pursuant to his settlement agreement. This simple fact clearly distinguishes this case from *Allstate Insurance Co.* In *Allstate Insurance Co.*, the federal court of appeals determined that the beneficiary could not assign rights to future payments and the court only mentioned the underlying settlement in the context that the annuity contract was purchased as a result of a structured settlement. *Allstate Insurance Co.*, 882 F.2d at 858-60. This case can also be distinguished from *Johnson*, on the basis that the annuity contract in that case clearly prohibited assignments by the personal injury victims. *Johnson*, 26 F. Supp. 2d at 1227. Here, there is no language prohibiting assignments in either legal document.

Powless and Wentworth were not asking the court to advance, accelerate, or commute a benefit payment. This Safeco prohibitive-benefits clause deals with the timing, duration, or amount of a payment—not with the assignment of a payment. Judging from the clear and logical meaning of the language of the settlement agreement and the annuity contract, it appears that the parties did not intend to forbid Powless from assigning benefit payments. The clause that Safeco likens to an antiassignment clause only intended to preclude benefit payments on any date other than that contained within the contracts.

We will not find an ambiguity in the contractual language where none exists. See *In re Estate of Constantine*, 305 Ill. App. 3d 256, 260,

711 N.E.2d 1190, 1193 (1999), citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 706 N.E.2d 882 (1999). Thus, to the extent that the trial court relied upon Safeco's contractual arguments, it failed to uphold the clear terms of the structured-settlement agreement and the annuity contract. Accordingly, the order that sustained Safeco's objections amounted to an abuse of discretion.

Safeco pointed out in its objections that section 155.34 restricts transfers by assignment. Of course, Safeco was absolutely correct. However, since our legislature did not prohibit transfers by assignment, it clearly contemplated situations in which an assignment would be permissible. Rather than forbid assignments, the law merely requires that the party seeking to assign a benefit first seek and receive permission. 215 ILCS 5/155.34(b) (West 1998).

The intent of the Illinois House of Representatives in enacting section 155.34 is clear from a transcript of the House debate. The transcript reveals that the legislators had no intention of prohibiting a beneficiary from assigning a structured-settlement payment to a third party. In response to that question, the legislators stated that "[the beneficiaries] could [assign their rights to payments] but they would have to go back to court." 90th Ill. Gen. Assem., House Proceedings, April 10, 1997, at 95 (statement of Representative Leitch). The legislators also noted that this bill would simply serve as a precaution to the beneficiaries in that "before anyone could [assign their rights], *** they would have to go back to court and have it reviewed and approved." 90th Ill. Gen. Assem., House Proceedings, April 10, 1997, at 96 (statement of Representative Leitch).

We can find nothing in the statutory language, or in the debates that led to it, that would seek to restrict an assignment of a future benefit payment under the circumstances presented here.

In its objections to the assignment, Safeco also contended that it could possibly lose its favorable tax treatment pursuant to section 130(c)(2)(B) of the Internal Revenue Code (26 U.S.C. § 130(c)(2)(B) (1988)) if the assignment was allowed. No further explanation or argument was made regarding how such an assignment could affect Safeco's tax treatment.

The Internal Revenue Code allows an income exclusion of an amount of money assigned so long as the "amount does not exceed the aggregate cost of a qualified funding asset." 26 U.S.C. § 130(a) (1988). A qualified funding asset is an annuity contract meeting certain requirements and purchased by the assignee within 60 days of the assignment. See 26 U.S.C. § 130(d) (1988). An assignee may exclude from gross income "any amount received for agreeing to a qualified assignment *** to the extent that such amount does not exceed the aggregate cost of a qualified funding asset." 26 U.S.C. § 130(d) (1988).

In this case, Pekin made a qualified assignment of the payments to Safeco, and, therefore, Safeco is entitled to the tax benefits pursuant to section 130(c)(2)(B). Safeco's contention that it might lose this status is simply not supported by anything more than speculation. See *Western United Life Assurance Co. v. Hayden*, 64 F.3d 833, 842 (3d Cir. 1995). While the Internal Revenue Service has not yet issued any specific rulings or regulations on this precise issue, the plain language of the statute does not prohibit Powless's purported assignment. See *Settlement Funding, LLC v. Jamestown Life Insurance Co.*, 78 F. Supp. 2d 1349, 1358 (N.D. Ga. 1999). If a legislative body specifically lists certain items in a statute, that same statute is not generally interpreted to include other items not so listed. See *Settlement Funding, LLC*, 78 F. Supp. 2d at 1358, citing *United States v. Koonce*, 991 F.2d 693, 698 (11th Cir. 1993). Again, the issue is one of timing. Safeco will not be required to make a payment until the date specified in the annuity contract. To argue that changing the named payee on only one structured payment would result in Safeco's being penalized by the Internal Revenue Service is nothing more than conjecture.

For the foregoing reasons, the judgment of the circuit court of Wayne County is hereby reversed.

Reversed.

WELCH and HOPKINS, JJ., concur.