THIRD DIVISION

March 14, 2001

No. 1--00--1111

In re
 DENNIS SHAFFER, 

Petitioner-Appellant.

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and KEYPORT LIFE INSURANCE COMPANY, 

Intervenors-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Henry A. Budzinski,

Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Petitioner Dennis Shaffer appeals from orders of the circuit court granting intervenors Liberty Life Assurance Company of Boston's (Liberty Life) and Keyport Life Insurance Company's (Keyport) motion to reconsider the court's previous order granting petitioner's petition to allow assignment of future periodic payments and denying petitioner's petition to allow the assignment, and denying petitioner's motion to reconsider.  On appeal, petitioner contends that the trial court erred in denying his petition to allow assignment.  For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On October 14, 1998, petitioner entered into a settlement of his personal injury lawsuit against Meccon Industries (petitioner's employer), General Mills, Inc., and their insurance carriers.  Pursuant to the settlement agreement, petitioner agreed to accept a lump sum payment of $60,000 from Meccon and $110,000 from General Mills.  Petitioner was also to receive future periodic payments under a structured settlement arrangement from General Mills, through its insurance carrier Liberty Mutual Insurance Company (Liberty Mutual), of $41,600 on September 30, 2001, $20,000 on September 30, 2003, and $20,000 on September 30, 2008.  Paragraph 3 of the settlement agreement contained an antiassignment provision that stated:

"
Payee's Rights to Payments

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff, nor shall the Plaintiff have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise."

On September 24, 1998,
(footnote: 1) pursuant to the settlement agreement, Liberty Mutual executed a qualified assignment of its liability within the meaning of section 130
(footnote: 2) of the Internal Revenue Code of 1986 (Revenue Code) (26 U.S.C. §130 (2000)) to Keyport.  Thereafter, pursuant to the settlement agreement, Keyport purchased an annuity from Liberty Life to fund its liability.

On May 7, 1999, petitioner entered into a purchase agreement with Singer Asset Finance Company (Singer)
(footnote: 3) and attempted to assign two of his future periodic payments to Singer in exchange for an immediate, discounted lump sum payment.  Petitioner sought to enter into this agreement because he had been unemployed for some time and was behind on his mortgage payments.
(footnote: 4)
 To effectuate this agreement, on June 7, 1999, petitioner filed a petition to allow the assignment pursuant to section 155.34 of the Illinois Insurance Code (215 ILCS 5/155.34 (West 1998)), which provides:

"No person who is a beneficiary of a structured settlement of a claim for personal injury may assign in any manner the payments of the settlement without prior approval of the circuit court of the county where an action was or could have been maintained."  215 ILCS 5/155.34(b).

On October 5, 1999, the circuit court approved the assignment, holding that the antiassignment provision was ambiguous because it denied petitioner the power to assign future payments but did not deny him the right to assign future payments.  According to the court, there was a distinction between the two, which created an ambiguity in the provision.  Liberty Life and Keyport filed a motion to reconsider and on January 6, 2000, the trial court reversed its prior decision, holding that upon rehearing it would deny petitioner's petition to allow assignment because it "finds that the anti-assignment provision in the Settlement Agreement is unambiguous and enforceable."  In the report of proceedings from this date, the trial court noted that since its original decision, the case of 
Henderson v. Roadway Express
, 308 Ill. App. 3d 546, 720 N.E.2d 1108 (1999), had been decided, which it was bound by because it was the only appellate court decision on point.  The trial court concluded that the antiassignment language was "unambiguous," "very clear," and "it prohibits the assignment."  The court also stated that no matter what the inequities were in the case and that although it felt sorry for petitioner, it had no discretion in the matter and it was bound by 
Henderson
. 

Petitioner's motion to reconsider was denied on March 7, 2000.  This appeal followed.

ANALYSIS

Interpretation of contract language is a question of law, which we review 
de novo
.  
In re Nitz
, 317 Ill. App. 3d 119, 124, 729 N.E.2d 93 (2000).  As stated in 
Nitz
:

"When construing a contract, our duty is to effectuate the intent of the parties to the contract.  [Citation.]  The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract unless the contract is ambiguous.  [Citation.]  Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law.  [Citation.]  Such a contract is binding on both parties, and it is the duty of the court to construe it and enforce the contract as made."  
Nitz
, 317 Ill. App. 3d at 124.

In general, petitioner contends that despite the antiassignment provision in the settlement agreement, which he argues is ambiguous and therefore should be resolved in his favor, the trial court had discretion pursuant to section 155.34 of the Illinois Insurance Code to allow his proposed assignment.  While the First District Appellate Court has not addressed this argument, the four other districts have each done so and have rejected the argument.
(footnote: 5)  In each case, the court concluded that such antiassignment provisions were enforceable and the petitioners' attempted assignments of future payments were invalid.  All four cases involved the exact factual scenario presented in the instant case, with the exception that the insurance carriers, annuity carriers, or factoring companies may have been different.  Additionally, the antiassignment provisions were virtually identical with only minor variations.  

First, in 
Henderson
, 
a Fourth District case, the trial court refused to approve the plaintiff's petition for assignment, holding that the structured settlement agreement clearly and unambiguously prohibited the parties from assigning any of the periodic payments.  
Henderson
, 308 Ill. App. 3d at 548.  The plaintiff appealed, arguing first that the structured settlement agreement was ambiguous since one paragraph (paragraph 3, which is identical to paragraph 3 in the instant case) purported to bar assignment, yet another paragraph (paragraph 14, which is identical to paragraph 14 in the instant case) recognized the validity of such assignments.  
Henderson
, 308 Ill. App. 3d at 549.  The 
Henderson
 court rejected this argument, finding that the plain language of the structured settlement agreement "clearly indicate[d] the parties intended to forbid [the plaintiff] from assigning his periodic payments."  
Henderson
, 308 Ill. App. 3d at 549.  The court then noted that the two paragraphs addressed entirely different topics and, thus, the structured settlement agreement was neither ambiguous nor conflicting.  
Henderson
, 308 Ill. App. 3d at 549.  The court concluded that paragraph 3 prohibited the plaintiff from assigning future payments, but it did not prohibit him from assigning other rights and duties under the contract.  Thus, the court found that the reference to "assigns" in paragraph 14 "may reasonably be interpreted to refer to those assignments that are not expressly prohibited under the contract."  
Henderson
, 308 Ill. App. 3d at 549.  The 
Henderson
 court concluded that the two paragraphs could be harmonized and were not in conflict. 

The 
Henderson
 plaintiff next argued that the weight of authorities disfavored antiassignment provisions and refused to enforce them.  
Henderson
, 308 Ill. App. 3d at 549.  The 
Henderson
 court noted that no Illinois case had yet addressed the issue of antiassignment clauses in structured settlement agreements, although several cases had addressed antiassignment clauses in reference to real estate transactions.  According to 
Henderson
, these cases generally disfavored such provisions.  
Henderson
, 308 Ill. App. 3d at 550.  The 
Henderson
 court then reviewed cases from other jurisdictions addressing antiassignment clauses and noted that varying results had been reached as to such clauses' enforceability.  
Henderson
, 308 Ill. App. 3d at 550-51.  The 
Henderson
 court ultimately concluded that the antiassignment provision was a bargained-for provision that was intended to benefit all of the parties, noting the favorable tax consequences under section 130 of the Revenue Code.  Therefore, the court found the provision enforceable.  
Henderson
, 308 Ill. App. 3d at 551.  Additionally, while the court noted that any adverse tax consequences, as argued by the insurers for enforcement, may or may not be real and may or may not actually arise, the important factor was that the "parties implemented the antiassignment provisions with these concerns [favorable tax treatment] in mind."  
Henderson
, 308 Ill. App. 3d at 552.  In conclusion, the 
Henderson
 court stated that the structured settlement agreement "very clearly" forbids the plaintiff from assigning his future payments and that it was the "parties' clear intentions to incorporate this bargained-for provision."  
Henderson
, 308 Ill. App. 3d at 552.

In 
Green v. Safeco Life Insurance Co.
, 312 Ill. App. 3d 577, 727 N.E.2d 393 (2000), the Fifth District agreed with the result in 
Henderson
.  In 
Green
, the trial court approved the petitioner's petition for assignment.  
Green
, 312 Ill. App. 3d at 579.  After reciting the holding of 
Henderson
, the 
Green
 court concluded that the structured settlement agreement in the case before it "clearly and unequivocally forbids petitioner from assigning any portion of his periodic payments."  
Green
, 312 Ill. App. 3d at 581.  Accordingly, the 
Green
 court found that the circuit court abused its discretion in allowing the petitioner's petition for assignment.  
Green
, 312 Ill. App. 3d at 581.

In 
Piasecki v. Liberty Life Assurance Co.
, 
312 Ill. App. 3d 872, 728 N.E.2d 71 (2000), the Third District reversed the trial court's approval of the petitioner's petition for assignment.  On appeal, the petitioner contended that the antiassignment provision was unenforceable because it was against public policy since it conflicted with section 317(2) of the Restatement (Second) of Contracts, whereas the insurance carrier contended that it might suffer adverse tax consequences and, therefore, the provision should be enforced.  
Piasecki
, 312 Ill. App. 3d at 874.  The 
Piasecki
 court agreed with the 
Henderson
 court's reasoning.  According to 
Piasecki
, although 
Henderson
 found that antiassignment provisions should be narrowly construed, 
Henderson
 nonetheless found that there were valid reasons to uphold such provisions in the context of structured settlement agreements, 
e.g.
, the favorable tax treatment given such agreements.  
Piasecki
, 312 Ill. App. 3d at 874.  
Piasecki
 also noted that 
Henderson
 concluded that because the antiassignment provision mirrored the language of section 130 of the Revenue Code, this was an indication that the parties bargained for the provision and intended to benefit from the favorable tax treatment.  
Piasecki
, 312 Ill. App. 3d at 874.  The 
Piasecki
 court then concluded that antiassignment provisions fell within an exception to section 317(2).  This exception permitted the barring of an assignment if the assignment " 'would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract.' "  
Piasecki
, 312 Ill. App. 3d at 875, quoting Restatement (Second) of Contracts §317(2) (1981).  The 
Piasecki
 court noted that in antiassignment situations, the increased risk of adverse tax consequences exists.  The 
Piasecki
 court, like the 
Henderson
 court, concluded that because the antiassignment provision mirrored the Revenue Code, the "parties clearly intended to benefit from these tax provisions."  
Piasecki
, 312 Ill. App. 3d at 875.  Thus, the 
Piasecki
 court refused to disregard the intent of the parties when they executed the agreement and, therefore, enforced the antiassignment provision. 
Piasecki
, 312 Ill. App. 3d at 875.

Lastly, in 
Nitz
, the Second District reversed the trial court's approval of the petitioner's petition for assignment.  The appellate court first noted that the purpose of section 155.34 was to protect structured settlement agreement recipients.  It then found:

"The clear language of section 155.34(b) [of the Illinois Insurance Code] requiring court approval for assignments of payments presupposes that the payments in fact are assignable.  Where a structured settlement agreement does not permit the payments to be assigned, the court's authority to act on a petition seeking approval of the assignment of payments under such an agreement is not invoked, and the petition should be dismissed."  
Nitz
, 317 Ill. App. 3d at 123.  

The 
Nitz
 court also noted that the antiassignment provision utilized the language of section 130(c)(2)(B) of the Revenue Code and found that the inclusion of this language in the structured settlement agreement "strongly suggests that the parties intended to take advantage of the favorable tax benefits afforded structured settlements."  
Nitz
, 317 Ill. App. 3d at 125.  

The 
Nitz
 court then addressed the petitioner's contention that the antiassignment was void.  It first considered 
Henderson
, which had noted that such clauses were looked upon with disfavor but, after 
Henderson
 reviewed three federal cases as well as the tax implications, 
Henderson
 concluded that the antiassignment provision was bargained for and intended to benefit all parties and, therefore, was enforceable.  
Nitz
, 317 Ill. App. 3d at 126.  The 
Nitz
 court also considered 
Green
, which had agreed with the 
Henderson
 court's conclusion.  
Nitz
 then reviewed 
In re Estate of Powless
, 315 Ill. App. 3d 859, 734 N.E.2d 111 (2000), which distinguished 
Henderson
 and 
Green
 on the basis of a total absence of any antiassignment language in either the structured settlement agreement or annuity contract before it.  After reviewing these cases, the 
Nitz
 court rejected the petitioner's contention that the antiassignment provision was void.  
Nitz
, 317 Ill. App. 3d at 126.

The 
Nitz
 court next addressed the petitioner's contention that 
Henderson
 failed to take into consideration the legislative history of section 155.34 of the Illinois Insurance Code or Illinois case law disfavoring restraints on alienation.  
Nitz
 disagreed with this contention, first finding that 
Henderson
 did discuss Illinois precedent that acknowledged the disfavorable treatment of restraints on alienation.  The 
Nitz
 court further stated that it believed that the legislative history of section 155.34 contained "no insight into the validity of a particular antiassignability provision, since that section presumes that the assignment the court is asked to review is a valid one."  
Nitz
, 317 Ill. App. 3d at 127.  The 
Nitz
 court found that the antiassignment provision before it "denie[d] the petitioner both the power and the right to assign future payments."  
Nitz
, 317 Ill. App. 3d at 127.  In conclusion, the 
Nitz
 court stated: 

"[T]he terms of the structured settlement agreement, which were agreed to by the petitioner, prohibited the petitioner from assigning his periodic payments.  While not favored in the law, there is no public policy against the enforceability of antiassignment provisions in Illinois.  Therefore, it was the duty of the trial court to enforce the terms of the structured settlement agreement including the antiassignability provision as agreed to by the parties.

***  Because the structured settlement agreement in this case contained an enforceable antiassignment provision, section 155.34 does not apply to the petition in this case."  
Nitz
, 317 Ill. App. 3d at 132.

While none of the above discussed cases are binding on us (
Schiffner v. Motorola, Inc.
, 297 Ill. App. 3d 1099, 1102, 697 N.E.2d 868 (1998)), we find them persuasive.  Just as in the above four cases and, despite petitioner's arguments, we conclude that the language of the settlement agreement is clear and unambiguous and petitioner possesses no right or power to assign his future periodic payments.  Many of the arguments raised by petitioner were addressed by the above cases and we adopt their rationales as dispositive of those arguments, and make the following additional comments.

With respect to petitioner's contention that the settlement agreement is internally inconsistent and, therefore, ambiguous, we disagree.  Although petitioner argues that the settlement agreement denies only the 
power
 to assign future payments, not the 
right
 to assign them and, therefore, is ambiguous, this argument was rejected by 
Henderson
, 
Green
, 
Piasecki
, and 
Nitz
.  In all four cases, the antiassignment provision, like the antiassignment provision in the instant case, referred only to power and the courts nonetheless enforced the provisions.  In fact, 
Nitz
 specifically held that the antiassignment provision "denies the petitioner both the power and the right to assign future payments."  
Nitz
, 317 Ill. App. 3d at 127.

With respect to petitioner's contentions that the location of the antiassignment provision demonstrates that it only denies petitioner the power to alter the relationship between General Mills and its insurer and the significance of the placement of the provision escaped the attention of the trial court, we also disagree.  Each paragraph addresses a distinct topic and does not relate to any other paragraph unless so noted.

Petitioner further maintains that because the settlement agreement refers to "assigns" in two other paragraphs of the settlement agreement, paragraph 1 and paragraph 14, if there was no intent for him to have a right to assign his future payments, he could not have assigns.  
Henderson
 rejected a similar argument.  According to 
Henderson
, the paragraph containing a reference to "assigns" addressed a different issue, 
e.g.
, who retained rights under the contract in the event of dissolution or death of a party.  Also, 
Henderson
 concluded that the petitioner could assign other rights and duties under the settlement agreement.  Thus, the paragraphs could be harmonized.  
Henderson
, 308 Ill. App. 3d at 549.  We agree with 
Henderson's
 findings on this issue.  Moreover, we believe that the term "assigns" in paragraph 1, listed after "the Plaintiff, the Defendant, the Insurer, Meccon Industries and St. Paul Fire & Marine Insurance Co.," relates only to the corporate parties and not to petitioner.  Also included in the list which encompasses "assigns" is the term "heir," which term clearly relates only to petitioner and not to the corporate entities.  The same is true of paragraph 14.  This paragraph refers to petitioner and the insurer and then states that the settlement agreement is binding on "executors, administrators, personal representatives, heirs, successors and assigns of each."  Again, "assigns" logically relates to the insurer and not to petitioner, just as executors, personal representatives, and heirs relate only to petitioner and not to the insurer.

With respect to ambiguity, petitioner contends that the use of the term "payee" reflects the fact that he has a right to assign his future payments.  According to petitioner, elsewhere in the settlement agreement he is referred to as "plaintiff" and, therefore, the change in identification terms demonstrate and intend a different capacity.  However, in paragraph 2, petitioner is specifically identified by his proper name Dennis Shaffer as the "Payee."  Therefore, petitioner's argument that the use of the term "payee" versus the use of the term "plaintiff" renders the settlement agreement ambiguous is without merit.  The terms are interchangeable and it was the intent of the parties to refer to petitioner when using either the term plaintiff or payee.  Based on the foregoing, we do not find the settlement agreement ambiguous.  It was clearly the intent of the parties that petitioner would have no ability to assign his future periodic payments.

We next address petitioner's contention that the trial court had authority, by virtue of section 155.34 of the Illinois Insurance Code, to override the antiassignment provision and, thus, had the power to review the proposed assignment.  Petitioner sets forth three arguments: (1) that there is no absolute restraint on alienation; (2) that section 155.34 applies to 
all
 structured settlement agreements, not just those without an antiassignment provision, and that the legislative history of section 155.34 confirms that this section assumes assignability because not a single legislator showed any concern for the actual terms of a structured settlement agreement--the legislators were only concerned with the need and interest to protect beneficiaries; and (3) that the trial court erred by deeming itself bound by 
Henderson
.
(footnote: 6)
 With respect to petitioner's contention that there is no absolute restraint on alienation, we agree.  Illinois law clearly disfavors restraints on alienation.  
Baker v. Loves Park Savings & Loan Ass'n
, 61 Ill. 2d 119, 123, 333 N.E.2d 1 (1975); 
Gale v. York Center Community Cooperative, Inc.
, 21 Ill. 2d 86, 92, 171 N.E.2d 30 (1960)
.  Nonetheless, as noted by the 
Nitz
 court, there is no general rule or public policy invalidating antiassignment provisions.  In fact, the courts in 
Baker
 and 
Gale
, relied upon by petitioner, upheld restraints on alienation.

With respect to petitioner's argument that section 155.34 of the Illinois Insurance Code applies to all settlement agreements whether they contain an antiassignment provision or not, we disagree.  While the plain language of section 155.34 does not indicate one way or another whether it is affected by contractual antiassignment provisions or, whether, when such a provision exists, the section is inapplicable, and as the 
Nitz
 court noted, the legislative history provides no insight into the validity of antiassignment provisions, we believe that the legislative history demonstrates one concern in promulgating section 155.34--the protection of structured settlement payment recipients from unscrupulous factoring companies, in particular, companies soliciting by use of 800 numbers.  The clear intent of the legislature was to "put out of business" the unscrupulous 800 numbers.  See 90
th
 Ill. Gen Assem., House Proceedings, April 10, 1997, at 1-10.  There is no other concern or intent evident from the legislative discussions and no other basis for enacting section 155.34.  Accordingly, while the trial court has discretion to approve a proposed assignment, it only has such discretion where a petitioner has a right to assign pursuant to a settlement agreement.  If a petitioner possesses no right to assign under a settlement agreement because of an antiassignment provision, the trial court has no discretion.

Petitioner lastly contends that the settlement agreement is either akin to a self-settled spendthrift trust or, in the alternative, an adhesion contract because the antiassignment provision was forced upon him, he had unequal bargaining power in negotiation of the settlement agreement, and the settlement agreement was a form contract, each of which are void.  We deem the first argument waived because petitioner failed to raise it in the trial court.  
Evans v. General Motors Corp.
, 314 Ill. App. 3d 609, 616, 732 N.E.2d 79 (2000).  With respect to the second argument, we agree with the courts in 
Henderson
, 
Piasecki
, and 
Nitz
 that the antiassignment provision was a bargained-for provision, intended to benefit both parties.  Accordingly, the antiassignment provision is not an adhesive provision.

Based on the foregoing, we hold that the antiassignment provision is valid and conclude that the trial court had no discretion to review the proposed assignment pursuant to section 155.34 of the Illinois Insurance Code.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA and WOLFSON, JJ., concur.

FOOTNOTES
1:
How this date can predate the settlement agreement is not evident from the record and seems illogical.  However, the documents are dated as such in the record.

2:
This provision grants favorable tax consequences to structured settlement agreements and qualified assignments.

3:
These transactions are often referred to as factoring transactions and the companies purchasing the structured settlement payments are known as factoring companies.  L. Andrada, 
Structured Settlements: The Assignability Problem
, 9 S. Cal. Interdisciplinary L.J. 465, 476 (2000).

4:
A complaint to foreclose mortgage against petitioner was filed on September 29, 1999.  This proceeding has been stayed pending disposition of the instant appeal.

5:
There is a fifth case, from the Fifth District.  However, that case is distinguishable because there the settlement agreement did not contain any antiassignment language.  
In re Estate of Powless
, 315 Ill. App. 3d 859, 734 N.E.2d 111 (2000).

6:
We reject this argument.  The trial court was bound by 
Henderson
 because it was the only appellate court case on the issue at the time of the trial court's decision.  
Schiffner
, 297 Ill. App. 3d at 1102.