# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Settlement Funding, LLC v. Brenston*, 2013 IL App (4th) 120869

---

| | |
|---|---|
| Appellate Court Caption | SETTLEMENT FUNDING, LLC, Petitioner/Transferee-Appellee, v. CATHY BRENSTON, Respondent/Transferor-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-12-0869, 4-12-0870, 4-12-0944 cons. |
| Filed | August 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's dismissal of respondent's petitions to vacate the orders approving the transfer of her structured settlement payment rights to petitioner was reversed and the cause was remanded with directions to grant respondent's petitions and enter orders declaring the transfer orders void *ab initio*, since petitioner knew or should have known that respondent's structured settlement contained an antiassignment clause, that the payments could not be assigned, and that the issue of assignment was concealed from the trial court. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, Nos. 07-CH-451, 08-CH-329; the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Jeffrey M. Goldberg (argued), Bradley Schulman, and Gregory P. Markwell, all of Jeffrey M. Goldberg Law Offices, of Chicago, for appellant. |
| | |
| | Diane Green-Kelly (argued), Michael D. Richman, and David A. Maas, all of Reed Smith LLP, of Chicago, and Margaret M. Grignon, *pro hac vice*, of Reed Smith LLP, of Los Angeles, California, for appellee. |

| Panel | JUSTICE CATES delivered the judgment of the court, with opinion. Justices Stewart and Wexstten concurred in the judgment and opinion. |

## OPINION

¶ 1    The respondent-transferor, Cathy Brenston, filed petitions to vacate void orders which approved the transfer of her structured settlement payment rights to the petitioner-transferee, Settlement Funding, LLC. The circuit court of Sangamon County found that Brenston's petitions, filed more than two years after the entry of the transfer orders, were time-barred. On appeal, Brenston contends that the court erred in dismissing the petitions where the pleadings sufficiently showed that the orders approving the transfers were obtained by fraud and therefore void and subject to challenge at any time. Brenston also contends that the court erred in denying her motions to reconsider and motions for leave to file amended petitions to assert a legal disability of incompetence. We reverse and remand with directions.

¶ 2                     I. FACTS AND PROCEDURAL HISTORY
¶ 3    This case involves three appeals (Nos. 4-12-0869, 4-12-0870, 4-12-0944) that originated in the Fourth District Appellate Court. The cases were consolidated under No. 4-12-0869 for purposes of hearing and decision. At the request of the Fourth District, the Illinois Supreme Court issued an order assigning the consolidated appeals to this court. The appeals challenge the validity of the trial court's orders granting two petitions filed by Settlement Funding, pursuant to the Structured Settlement Protection Act (Act) (215 ILCS 153/1 to 35 (West 2008)), seeking court approval for the transfer of certain structured settlement payment rights due Brenston. The structured payments were part of a negotiated settlement of a medical negligence action that Brenston filed in 1999. We begin there and set forth the facts and procedural history that are pertinent to the disposition of this appeal.

¶ 4                     A. The Underlying Medical Negligence Action
¶ 5    In 1999, Cathy Brenston filed a medical negligence action in the circuit court of Cook

County, against defendants, University of Illinois Chicago Hospital and University of Illinois at Chicago Women's Care Center. Brenston alleged that she suffered severe injuries as a result of negligent medical treatment she received at the University of Illinois Chicago Hospital and the University of Illinois at Chicago Women's Care Center during the period from August 1998 through November 1998.

¶ 6 In January 2003, Brenston settled the case with the University of Illinois Board of Trustees (University Board). The settlement included a lump-sum payment of $864,228 and structured periodic payments. According to the payment schedule, Brenston would receive $5,000 per month, guaranteed for 120 months, beginning March 1, 2003, and ending on February 1, 2013, with payments increasing 3% annually, and thereafter, a monthly payment of $6,719.58, guaranteed for 60 months, beginning March 1, 2013, and running for the longer of her life or through February 1, 2018, with payments increasing 3% annually. The settlement documents include the written settlement agreement, uniform qualified assignment release and pledge agreements, and annuity contracts.

¶ 7                           1. The Written Settlement Agreement

¶ 8 The written settlement agreement contains an antiassignment provision which states: "Claimant acknowledges that the Periodic Payments described in Section 2.0 cannot be accelerated, deferred, increased or decreased by the Claimant; nor shall Claimant have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." The written settlement agreement also includes a provision in which the claimant acknowledges that the University Board will make qualified assignments of its liability to make periodic payments to Allstate Settlement Corporation and to GE Capital Assignment Corporation, within the meaning of section 130(c) of the Internal Revenue Code of 1986, as amended, and that the claimant will accept the assignments without a right of rejection.

¶ 9                  2. The Uniform Qualified Assignments and Annuity Contracts

¶ 10 The University Board executed two uniform qualified assignment release and pledge agreements within the meaning of and subject to the conditions in section 130(c) of the Internal Revenue Code of 1986. One qualified assignment is with Allstate Assignment Company (the Allstate Assignment) and the other is with GE Capital Assignment Corporation (the GE Assignment). In each agreement, the University Board is the assignor and Brenston is the secured party.

¶ 11 In the Allstate Assignment, Allstate Assignment Company, the assignee-debtor, and Allstate Life Insurance Company, the annuity issuer, agreed to accept a qualified assignment of the University Board's obligation to make monthly payments to Brenston in the sum of $5,000, for the period from March 1, 2003, through February 1, 2013. The Allstate Assignment states that all rights of ownership in and control of the annuity remain vested in the assignee-debtor and that Brenston, as the secured party, has no rights of ownership or control over the annuity. The face page of the Allstate annuity contract contains a stamped notice which states:

"This annuity contract has been delivered to the possession of Cathy Brenston for the sole purpose of perfecting a lien and security interest of such person. Cathy Brenston is not the owner of, and has no ownership right in this contract and may not anticipate, sell, assign, pledge, encumber or otherwise use this contract as any form of collateral."

¶ 12 In the GE Assignment, GE Capital Assignment Corporation, the assignee-debtor, and GE Capital Assurance Company, the annuity issuer, agreed to accept a qualified assignment of the University Board's obligation to make monthly payments to Brenston in the sum of $6,719.58, beginning March 1, 2013, and continuing for the longer of her life or through February 1, 2018. The GE Assignment states that Brenston, as the secured party, "may not transfer, sell, pledge, hypothecate, or otherwise alienate or encumber (referred to in this agreement as 'transfers')" her right to receive the periodic payments without first complying with any law specifically applying to such transfers in Brenston's home state, the Virginia structured settlement protection act, and any applicable federal law, and that "any transfers or attempted transfers in contravention of this provision shall be void." The GE Assignment further provides that the secured party may make a written request to change the beneficiary designation, but that the assignee's decision on that request is final.

¶ 13 GE Capital Assignment Corporation subsequently funded its obligation with an annuity purchased from Genworth Life Insurance Company. Under the terms of the Genworth annuity contract, Brenston would receive a monthly payment of $6,719.58, beginning March 1, 2013, guaranteed for 60 months or for Brenston's life. The front page of the Genworth annuity contract is stamped with a notice similar to that on the face page of the Allstate annuity. It states that Cathy Brenston is not the owner of, and has no ownership right in, the annuity contract, and that Brenston may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral. The annuity contract further provides that Brenston, as the secured party, has no rights of ownership or control of the contract, and that no payments to be made under the contract may be transferred, commuted, or encumbered by Brenston.

¶ 14 B. Settlement Funding's Petition for Approval of
Transfer–No. 07-CH-451

¶ 15 On June 12, 2007, Settlement Funding filed a two-count petition in the circuit court of Sangamon County (07-CH-451) seeking approval of a transfer of certain structured settlement payment rights from Brenston. The petition was filed pursuant to the Act (215 ILCS 153/1 to 35 (West 2006)) and section 5891 of the federal tax code (26 U.S.C. § 5891 (2006)). Count I asserts that Brenston and Settlement Funding have entered into an "Absolute Assignment and UCC Article 9 Security Agreement" wherein Brenston has agreed to assign to Settlement Funding her monthly payments in the sum of $6,719.58, for the five-year period from March 1, 2013, through February 1, 2018, under the Genworth annuity, to Settlement Funding in exchange for a single payment of $92,041.70, less the processing fees. Settlement Funding attached an Illinois transfer disclosure and a Delaware transfer disclosure to the petition. The disclosures state that the sum of the aggregate payments for the period of March 1, 2013, through February 1, 2018, is $428,101.95, with a discounted present cash

value of $264,088.08.

¶ 16    Count II states that Brenston and Settlement Funding have entered into an "Absolute Assignment and UCC Article 9 Security Agreement" wherein Brenston has agreed to assign to Settlement Funding a portion of her monthly payments in the sum of $4,251.37, for the five-year period from March 1, 2008, through February 1, 2013, under the Allstate annuity, in exchange for a single payment of $146,782.35, less legal and processing fees. Settlement Funding attached an Illinois transfer disclosure to the petition. The disclosure states that the sum of the aggregate payments for the period of March 1, 2008, through February 1, 2013, is $270,853.21, with a discounted present cash value of $222,405.52.

¶ 17    In each count, Settlement Funding asserts that it provided a disclosure statement to Brenston in compliance with section 10 of the Act (215 ILCS 153/10 (West 2006)); that Brenston desires to proceed with the transaction in order to pay off her mortgage and school loan and for damages caused in an auto accident; that the transfer is in the best interest of Brenston, taking into account the welfare and support of her dependents, if any; and that the transfer does not contravene any federal or state statutes or the order of any court or responsible governmental or administrative authority. It also asserts that Brenston has been advised in writing to seek independent professional advice regarding the assignment and that she has either received or knowingly waived the advice. Settlement Funding alleges that the petition was served on the owners and the issuers of the annuities and that "jurisdiction and venue are proper under 215 ILCS 153/25(b), which states that the application under the Structured Settlement Protection Act 'shall be brought in the circuit court of the county in which an action was or could have been maintained.' " It also alleges that the petition and all supporting exhibits comply with the provisions of the Act.

¶ 18    In support of count I of the petition, Settlement Funding attached a copy of the following documents: the Genworth periodic payment schedule and the first page of the annuity contract, the absolute assignment agreement between Brenston and Settlement Funding regarding the Genworth annuity, the Illinois transfer disclosure and the Delaware transfer disclosure, and a three-page typed affidavit form signed by Brenston on May 31, 2007. In support of count II, Settlement Funding attached a copy of the following documents: the Allstate periodic payment schedule and the face page of Allstate Life annuity, the absolute assignment agreement between Brenston and Settlement Funding regarding the Allstate annuity, the Illinois transfer disclosure law form, and a three-page typed affidavit form signed by Brenston on June 4, 2007. Notably absent from the attachments are copies of the original structured settlement agreement and the qualified assignment agreements and a complete copy of each annuity. The statements made in the Brenston affidavits are virtually identical, except for the specific annuity information. In each affidavit, Brenston states that she has received the disclosure detailing the terms of the agreement, that she fully and completely understands the terms of the agreement, that Settlement Funding advised her to seek professional advice regarding the agreement, and that she has received advice or fully intends to receive independent professional advice regarding the agreement.

¶ 19    The notice of filing indicates that the petition and a notice of hearing were sent, via Federal Express, to Brenston, GE Capital Assignment Corporation, Genworth Life Insurance Company, Allstate Life Insurance Company, and Allstate Assignment Corporation, on June

11, 2007. The University Board was not provided with a copy of the petition or the notice of hearing. The notice of hearing advised that a hearing would occur on said petition on June 28, 2007. There is no indication that a summons was served on Brenston, the sole named defendant, and there is no return of service. Brenston did not file a waiver of her appearance. According to the record, neither Brenston nor any other interested person filed an appearance, an answer, or a stipulation to the petition. On June 28, 2007, 16 days after the petition to approve the transfers was filed, the trial court entered an order approving the transfers. In its order, the court found that due notice was served upon the owners and issuers of the annuities, that the respondent, Brenston, *pro se*, filed an affidavit in support of the petition, and that it had jurisdiction of the matter. A docket entry dated June 28, 2007, states that the order approving the transfer was signed on June 28, 2007, and that the case was closed.

¶ 20                         C. Settlement Funding's Petition for Approval of
                                    Transfer–No. 08-CH-329

¶ 21        On March 27, 2008, Settlement Funding filed a petition in the circuit court of Sangamon County (No. 08-CH-329) seeking approval of a transfer of the structured settlement payment rights under the annuity contract owned by GE Capital Assignment Corporation and issued by Genworth Life Insurance Company. The petition was filed pursuant to the Act and section 5891 of the federal tax code. The petition asserts that Brenston has entered into an "Absolute Assignment and UCC Article 9 Security Agreement" with Settlement Funding wherein she has agreed to assign 120 monthly payments in the sum of $6,289.84, with a 3% annual increase, to Settlement Funding, for a period commencing March 1, 2018, through February 1, 2028, in exchange for a single payment of $73,025.50, less the processing fees and term/self insurance. Settlement Funding attached an Illinois transfer disclosure and a Delaware transfer disclosure to the petition. The disclosures state that the sum of the aggregate payments for the period of March 1, 2018, through February 1, 2028, is $865,271.60, with a discounted present cash value of $505,320.36.

¶ 22        Other than the sums payable, the allegations in the petition are almost identical to those set forth in the petition filed in No. 07-CH-451. Settlement Funding asserts that Brenston desires to proceed with the transaction in order to pay off her mortgage and school loan and for damages caused in an auto accident. It also asserts that the transfer is in the best interest of Brenston and that the transfer does not contravene any federal or state statutes or the order of any court or responsible governmental or administrative authority. Settlement Funding states that Brenston was advised in writing to seek independent professional advice regarding the assignment and that she has either received or knowingly waived the advice. Settlement Funding alleges that the petition was served on the owner and the issuer of the annuity and that "jurisdiction and venue are proper under 215 ILCS 153/25(b), which states that the application under the Structured Settlement Protection Act 'shall be brought in the circuit court of the county in which an action was or could have been maintained.' " It also alleges that the petition and all supporting exhibits comply with the provisions of the Act.

¶ 23        Settlement Funding attached a copy of the following documents to the petition: the GE

payment schedule, the first page of the annuity contract, the absolute assignment agreement, the Illinois transfer disclosure and the Delaware transfer disclosure, a three-page typed affidavit signed by Brenston on March 26, 2008, a sworn statement of dependents, and a disclosure affidavit. Again, absent from the attachments are copies of the original structured settlement agreement, the qualified assignment agreement, and a complete copy of the annuity. In the affidavit, Brenston states that she has received the disclosure detailing the terms of the agreement, that she fully and completely understands the terms of the agreement, that Settlement Funding advised her to seek professional advice regarding the agreement, and that she has received advice or fully intends to receive independent professional advice regarding the agreement. Contrary to the allegations in Settlement Funding's petition, Brenston states in her affidavit that she will use the lump-sum payment from Settlement Funding to pay off outstanding property taxes, medical bills related to her recent stroke, and living expenses and to purchase a term life insurance policy in which Settlement Funding will be a payee along with her beneficiaries.

¶ 24   A notice of filing indicates that the petition and a notice of hearing were served on Brenston, GE Capital Assignment Corporation, and Genworth Life Insurance Company, via Federal Express on March 26, 2008. The University Board was not provided with a copy of the petition and the notice of hearing. The notice of hearing advised that a hearing would occur on the petition on March 31, 2008. There is no indication that a summons was served on Brenston, the sole named defendant, and there is no return of service. According to the record, neither Brenston nor any other interested person filed an appearance, an answer, or a stipulation to the petition. Brenston did not file a waiver of her appearance. On March 31, 2008, four days after the petition was filed, the trial court entered an order granting the petition to transfer. In its order, the court again found that due notice was served upon the owners and issuers of the annuities, that the respondent, Brenston, *pro se*, filed an affidavit in support of the petition, and that it had jurisdiction of the matter. A docket entry dated March 31, 2008, states that the order approving the transfer of structured settlement was signed on March 31, 2008. An amended order was entered on April 10, 2008. The amended order authorized the annuity owner and the annuity issuer to pay the entire monthly payment to Settlement Funding and to require Settlement Funding to remit Brenston's portion to her. The case was then closed.

¶ 25                    D. Brenston's Section 2-1401 Petitions to
                              Void the Transfer Orders

¶ 26   On October 28, 2011, Brenston filed a petition, pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2006)), in No. 07-CH-451 to void the order entered June 28, 2007, and a separate section 2-1401 petition in No. 08-CH-329 to void the orders entered March 31, 2008, and April 10, 2008. Therein, Brenston contended that the orders must be declared void because the Structured Settlement Protection Act and the antiassignment clauses in the settlement agreement and the qualified assignment agreements prevented the trial court from exercising jurisdiction. Brenston also argued that the orders were void *ab initio* because the circuit court lacked the inherent power or authority

to approve Settlement Funding's petitions to transfer.

¶ 27    Settlement Funding filed a motion to dismiss Brenston's petitions pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2006)), on the ground that the petitions were not filed within the two-year period required in section 2-1401. In the alternative, Settlement Funding moved, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)), to dismiss the petitions on the ground that the circuit court had subject matter jurisdiction to enter the orders, that Brenston has already received the financial benefits of the orders, and that she provided no reason to vacate said orders.

¶ 28    Brenston's attorney filed emergency motions to stay any ruling on the motions to dismiss pending an evaluation of Brenston's competency. Following a hearing, the trial court found that the motions to dismiss involved issues of law and that Brenston's competence was not relevant, and therefore denied Brenston's emergency motions to stay the proceedings. A few weeks later, the court issued orders granting Settlement Funding's motions to dismiss pursuant to section 2-619. The court found that the section 2-1401 petitions were filed more than two years after the entry of the underlying orders approving the transfers and that they were time-barred under section 2-1401. Brenston's motions to reconsider and motions for leave to file an amended petition were denied.

¶ 29                              II. ANALYSIS

¶ 30    On appeal, Brenston contends that the trial court erred in dismissing her section 2-1401 petitions where the pleadings sufficiently showed that the orders approving the transfers were obtained by fraud and therefore void *ab initio* and subject to challenge at any time.

¶ 31    Generally, a petition for relief from judgment filed pursuant to section 2-1401, to be legally sufficient, must be filed within two years after the entry of the order or judgment, and the petitioner must allege a meritorious defense to the original action and must show due diligence in bringing the petition. 735 ILCS 5/2-1401(b), (c) (West 2008); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103, 776 N.E.2d 195, 201 (2002). These requirements do not apply to a petition to vacate a void judgment. *Sarkissian*, 201 Ill. 2d at 104, 776 N.E.2d at 201-02. Petitions brought on voidness grounds need not be brought within section 2-1401's two-year time limitation. *Sarkissian*, 201 Ill. 2d at 104, 776 N.E.2d at 202. A void judgment may be attacked at any time or in any court, either directly or collaterally. In addition, the allegation that the judgment is void negates the need to allege a meritorious defense and due diligence. *Sarkissian*, 201 Ill. 2d at 104, 776 N.E.2d at 202.

¶ 32    A void judgment is one that is entered by a court lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the judgment, or where the order was produced by fraud. *Miller v. Balfour*, 303 Ill. App. 3d 209, 215, 707 N.E.2d 759, 765 (1999). Not all judgments procured by fraud are void. *In re Adoption of E.L.*, 315 Ill. App. 3d 137, 154, 733 N.E.2d 846, 859 (2000). Courts have distinguished between fraud that prevents a court from acquiring jurisdiction or merely provides colorable jurisdiction and fraud that occurs after the court's valid acquisition of jurisdiction, such as through false testimony or concealment. *E.L.*, 315 Ill. App. 3d at 154, 733 N.E.2d at 859. Judgments procured by the type of fraud that prevents a court from acquiring jurisdiction or provides

-8-

merely colorable jurisdiction are void *ab initio*. *E.L.*, 315 Ill. App. 3d at 154, 733 N.E.2d at 859.

¶ 33    It has been long recognized that a court has the inherent power to inquire into the integrity of its own judgments and to vacate a judgment where it finds that a fraud perpetrated by a party or an officer of the court has interfered such that the judiciary cannot perform its impartial task of judging the case before it. See, *e.g.*, *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (a rule of equity, firmly established in English practice, effectively states that under certain circumstances, including an after-discovered fraud, relief will be granted against judgments which are deemed sufficiently gross or manifestly unconscionable to demand a departure from rigid adherence to a term rule), *rev'd on other grounds*, *Standard Oil Co. v. United States*, 429 U.S. 17 (1976)); *E.L.*, 315 Ill. App. 3d at 155-56, 733 N.E.2d at 860-61 (public policy required that a judgment order of adoption procured by ongoing fraud be held void, as to hold otherwise would serve to encourage fraud in future adoption proceedings). The equitable power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts on the rationale that a decision produced by a fraud on the court is essentially not a decision at all and never becomes final. Courts are cautious in exercising such equitable power out of deference to the deeply rooted policy in favor of the finality of judgments.

¶ 34    The Illinois General Assembly enacted provisions of the Structured Settlement Protection Act (215 ILCS 153/1 to 35 (West 2004)), and its predecessor statute (215 ILCS 5/155.34 (West 1998)), to protect settlement recipients from the growing number of factoring companies using the allure of quick and easy money to induce settlement recipients to cash out their future payments at substantial discounts, depriving victims and their families of the long-term financial security the structured settlements were designed to provide. See *In re Shaffer*, 319 Ill. App. 3d 1048, 1057, 746 N.E.2d 285, 293 (2001); *In re Nitz*, 317 Ill. App. 3d 119, 123, 739 N.E.2d 93, 97-98 (2000).

¶ 35    Section 25 of the Act states that before any transfer may occur, the transferee is required to submit an application in the circuit court of the county where the action was or could have been maintained. 215 ILCS 153/25 (West 2008). Section 15 provides the court must make express findings that the transfer is in the best interest of the payee, that the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and that the payee has either received such advice or knowingly waived such advice in writing, and that the transfer does not contravene any applicable statute or order of any court or government authority. 215 ILCS 153/15 (West 2008). Section 30 expressly provides that the provisions of the Act may not be waived by any payee. 215 ILCS 153/30 (West 2008).

¶ 36    With these principles in mind, we now review, *de novo*, the trial court's orders dismissing Brenston's section 2-1401 petitions. *People v. Vincent*, 226 Ill. 2d 1, 871 N.E.2d 17 (2007). We note that the facts pertinent to our disposition are evident from the record and are undisputed.

¶ 37    In this case, Settlement Funding filed its petitions for approval of the transfer of

Brenston's structured settlement payment rights in the circuit court of Sangamon County invoking the provisions of the Act, even though section 25 of the Act clearly states that the transferee is required to file its petition in the circuit court of the county where the action was or could have been maintained. 215 ILCS 153/25 (West 2008). Here, the record clearly shows, and there is no dispute, that the underlying medical negligence case was filed in Cook County, that Brenston resides in Cook County, and that Settlement Funding's counsel maintains his law office in Cook County. Further, it is undisputed that Brenston's structured settlement agreement contains an antiassignment provision. The antiassignment provision clearly and unambiguously states that Brenston does not have the power to sell, mortgage, encumber, or anticipate the periodic payments or any part thereof, by assignment. The qualified assignment agreements and the annuity contracts expressly prohibit Brenston from assigning or encumbering the structured payments. Settlement Funding did not challenge the validity or enforceability of the antiassignment provision in its pleadings. The record shows that Settlement Funding omitted any reference to the provision, thus concealing a material fact from the trial court. This is significant because our courts have consistently held that where a structured settlement agreement does not permit the payee to assign her periodic payments, the trial court must enforce the antiassignment provision and it has no authority under the Act to grant a petition seeking approval of the transfer of structured payment rights. See *In re Foreman*, 365 Ill. App. 3d 608, 614, 850 N.E.2d 387, 392 (2006); *Shaffer*, 319 Ill. App. 3d 1048, 746 N.E.2d 285; *Nitz*, 317 Ill. App. 3d 119, 739 N.E.2d 93; *Green v. Safeco Life Insurance Co.*, 312 Ill. App. 3d 577, 727 N.E.2d 393 (2000); *Henderson v. Roadway Express*, 308 Ill. App. 3d 546, 720 N.E.2d 1108 (1999). Here, Brenston's settlement agreement contained a specific and clear expression of the intent to eliminate her power to assign periodic payments. This provision was part of the negotiated settlement between Brenston and the University Board. Because Brenston's settlement agreement contained an enforceable antiassignment provision, the trial court had a duty to enforce that provision of the agreement and it had no authority under the Act to approve Settlement Funding's petitions. *Shaffer*, 319 Ill. App. 3d 1048, 746 N.E.2d 285; *Nitz*, 317 Ill. App. 3d at 132, 739 N.E.2d at 104.

¶ 38 Having determined that it was error to enter the orders approving the transfers, we next consider whether the trial court erred in dismissing Brenston's section 2-1401 petitions as time-barred. Consideration of the propriety of the dismissal depends upon whether the orders are void *ab initio* or voidable. As previously noted, a void order is one that is entered by a court lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the judgment, or where the order was produced by fraud (*Miller*, 303 Ill. App. 3d at 215, 707 N.E.2d at 765), and it may be attacked at any time or in any court, either directly or collaterally (*Sarkissian*, 201 Ill. 2d at 103, 776 N.E.2d at 201). After reviewing the undisputed record, we conclude as a matter of law that the transfer orders were procured by a fraud on the court and that they are, therefore, void *ab initio*.

¶ 39 As noted previously, Settlement Funding filed its petitions pursuant to the Act and averred that its petitions were proper and complied with the Act. It stated that the transfers would not contravene any federal or state statutes or orders of the court. Settlement Funding concealed by omission the existence of the antiassignment provision, and the omission was

material. Settlement Funding failed to acknowledge the antiassignment provision in the body of its petition. Settlement Funding attached a number of documents to its petitions, but omitted the underlying structured settlement contract, the qualified assignments, and the annuity contracts. The antiassignment provision is specifically set forth in the settlement contract. It expressly states that Brenston has no power to sell, mortgage, or encumber the periodic payments or any portion of them. The qualified assignments and the annuity contracts expressly state that Brenston has no right of control over the periodic payments and that she may not assign her right to receive the periodic payments. The GE Assignment further provides that Brenston may not transfer her right to receive the periodic payments without first complying with any law specifically applying to such transfers in Brenston's home state, the Virginia Structured Settlement Protection Act, and any applicable federal law, and "that any transfer or attempted transfer in contravention of this provision shall be void." Settlement Funding did not challenge the validity or enforceability of the antiassignment provision; it suppressed the existence of this provision in its pleadings before the court.

¶ 40    To permit Settlement Funding to plead ignorance of the law, under the circumstances presented here, would be contrary to the Act's overriding purpose, the protection of structured settlement payees. As previously noted, the various districts of our appellate court, in reported decisions, have consistently held that where an antiassignment provision in a structured settlement agreement contains a clear expression of intent to eliminate the payee's power to assign periodic payments, the trial court must enforce the agreement, and it has no authority under the Act to approve a petition seeking approval of the transfer of structured payment rights. Additionally, we cannot ignore the fact that Brian Mack, Settlement Funding's attorney of record in the Sangamon County actions, was an attorney of record in at least three of those cases, including the first case to decide the issue in Illinois. See *Shaffer*, 319 Ill. App. 3d 1048, 746 N.E.2d 285; *Nitz*, 317 Ill. App. 3d 119, 739 N.E.2d 93; *Henderson*, 308 Ill. App. 3d 546, 720 N.E.2d 1108.

¶ 41    Settlement Funding cannot credibly plead ignorance of the antiassignment provision in the structured settlement agreement either. Illinois Supreme Court Rule 137 states that every pleading, motion, or other paper of a party represented shall be signed by at least one attorney of record, and that the signature of that attorney constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good-faith extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose. Ill. S. Ct. R. 137 (eff. Feb. 1, 1994). Section 25 of the Act specifically requires the transferee to file the application for approval of a transfer of structured settlement payment rights. 215 ILCS 153/25 (West 2008). This provision places the responsibility squarely and solely on the transferee to make a reasonable inquiry, to investigate, and to determine whether the underlying structured settlement agreement contains an antiassignment clause that forbids a payee from assigning his periodic payments prior to filing a transfer petition under the Act. In this case, Settlement Funding was aware that Brenston had a structured settlement agreement. Given the legal precedents and counsel's experience, Settlement Funding was charged with knowledge that antiassignment

clauses were often included in structured settlement agreements. Through reasonable inquiry, Settlement Funding could have obtained a copy of the settlement agreement, the qualified assignments, and complete copies of the annuity contracts. Even if Settlement Funding was unable to acquire copies of these documents from Brenston, it could have discovered the identities of the lawyer who represented Brenston in her malpractice case and the defendants in that case, and it could have requested copies of the documents from one of those sources. In addition, Settlement Funding knew the identities of the owners and issuers of the annuities, and it could have requested copies from those sources. In summary, Settlement Funding knew or should have known that the structured settlement contained an antiassignment clause, and knew or should have known that if the settlement did contain such a clause, the payments could not be assigned. In abandoning or ignoring this nondelegable obligation, Settlement Funding fraudulently concealed this issue from the trial court and affirmatively alleged that its petitions for approval of the transfers were in compliance with the law.

¶ 42    Fraud has been said to comprise anything calculated to deceive, including all acts, omissions, and concealments resulting in damage to another. *Russow v. Bobola*, 2 Ill. App. 3d 837, 841, 277 N.E.2d 769, 771 (1972). Silence accompanied by deceptive conduct or suppression of material facts results in active concealment and amounts to fraud. *Russow*, 2 Ill. App. 3d at 841, 277 N.E.2d at 771. Here, Settlement Funding's suppression of the true facts of the settlement was an affirmative falsehood and a fraud upon the trial court. Though fraud by suppression is rarely susceptible of direct proof, we can reasonably conclude from the record before us that the material omissions and misrepresentations were made with the intent that the trial court conclude that the petitions were properly brought pursuant to the Act, that the transfer of Brenston's structured settlement payment rights was permitted under the settlement contract and the laws of Illinois, and that it had the authority to rule on the petitions. Settlement Funding filed petitions in Sangamon County that were not well grounded in fact or law. The omissions and misrepresentations were common threads throughout each petition, and they were tightly woven to create a cloak of fraud upon the court.

¶ 43    We find the actions and omissions of Settlement Funding to be beyond troubling. It procured a fraud upon the trial court in order to deceive the court into finding that it had authority to consider and rule on the petitions under the Act. In doing so, Settlement Funding entirely frustrated the purposes of the bargained-for antiassignment provisions in the underlying structured settlement annuity, interfered with the parties' contractual intentions, and contravened the clear legislative intent of the Act, to protect structured settlement recipients from unscrupulous practices by factoring companies. The fraud perpetrated in this case seriously affected the integrity of the normal process of adjudication so that the judicial system could not perform the impartial task of adjudicating cases.

¶ 44                                   III. CONCLUSION

¶ 45    In this case, we conclude that the Act did not apply because of the antiassignment clause in the settlement agreement and the annuity contract, and thus the trial court was without

authority to approve Settlement Funding's petitions under the Act. The trial court did not have the authority to approve Settlement Funding's petitions as its authority was merely colorable, created by Settlement Funding's fraudulent pleadings.

¶ 46    We further conclude that the underlying transfer orders were procured by a fraud on the trial court and are void *ab initio*. Therefore, the trial court erred in dismissing Brenston's section 2-1401 petitions in No. 07-CH-451 and No. 08-CH-329, and we reverse the orders of dismissal. We remand this case to the trial court with directions to grant Brenston's section 2-1401 petitions and to enter orders declaring the underlying transfer orders, entered June 28, 2007, March 31, 2008, and April 10, 2008, void *ab initio*. We further instruct the trial court, pursuant to its inherent equitable power, to conduct a hearing to restore Brenston to the economic position she held prior to the legally ineffective transfer of her annuity payments, less any funds advanced to her to avoid a windfall. Given our disposition, we need not address any remaining issues.

¶ 47    Accordingly, the orders of dismissal entered by the circuit court of Sangamon County are reversed and the cause is remanded with directions.


¶ 48    Reversed and remanded with directions.